CULPEPPER, Judge.
This is an action to recover architectural fees stipulated in a contract between plaintiff, an architect, and defendant, the developer of a large public housing project in Jennings. Defendant, G. L. Dozier, Inc. (Dozier), reconvened against plaintiff for damages allegedly sustained as a result of errors and omissions in the architectural plans and specifications. The trial court rendered a judgment (1) dismissing with prejudice plaintiff’s claim against Gilbert L. Dozier, individually; (2) dismissing with prejudice plaintiff’s claim against the Housing Authority for the City of Jennings; (3) ordering defendant, G. L. Dozier, Inc., to pay plaintiff the sum of $20,000, the full amount of the architectural fee provided in the contract; and (4) rejecting defendant’s reconventional demand for damages. Defendant, G. L. Dozier, Inc. appealed.
The substantial issues are: (1) Under the terms of the contract for architectural services, is plaintiff now entitled to the full amount of his fee? (2) Did the trial court err in rejecting defendant’s reconventional demand?
The record shows the defendant, G. L. Dozier, Inc. (Dozier), entered into a contract with the Jennings Housing Authority and the U. S. Department of Housing & Urban Development (HUD), to build a public housing project identified as “Jennings Turnkey Project LA-118-1” (the project). The project consisted of 150 housing units of varying descriptions. The total contract price payable to Dozier upon completion of the project was in excess of $2,440,000.
By letter dated June 27, 1973, Ellis and Dozier entered into an agreement whereby Ellis was to prepare the architectural plans and specifications for the project. The letter, which bears the signatures of Ellis and Gilbert L. Dozier, president of G. L. Dozier, Inc., states:
u * * *
“By mutual agreement between you and all previous sponsors, your fee on the project is to be Twenty Thousand and No/100 ($20,000.00) Dollars. I hereby agree to pay or cause to have paid the entire $20,000.00 architectural fees as follows:
“1. Seventy-five (75%) per cent ($15,-000.00) of the fee to be paid at the time the blanket construction mortgage is placed on the construction site.
*875 “2. The balance of the fee to be paid at the time the project is accepted by the Jennings Housing Authority and HUD. “If the foregoing properly sets forth our understanding, please execute in the signature block below.”
Subsequently, Ellis prepared the plans and specifications for the project. Dozier relied upon these plans in preparing his initial bid on the project and later in the actual construction of the project.
A blanket construction mortgage was placed on the property in October, 1973, and the Jennings Housing Authority accepted title to the project on October 15, 1974. The plaintiff, however, has not received any of the $20,000 fee stipulated in the contract.
Before discussing the substantial issues, we must dispose of plaintiff’s claim in his brief that he is entitled to a fee of $64,000, the amount sued for, instead of the $20,000 fee stipulated in the contract document previously quoted. Plaintiff, who was awarded a judgment of $20,000 in the trial court, did not appeal or answer defendant’s appeal. Therefore, he is precluded from having the judgment of the trial court modified or revised on appeal to increase the amount of the award of $64,000. La. C.C.P. Article 2133.
The first issue involves the interpretation of the contract between Ellis and Dozier, which sets Ellis’ architectural fee at $20,-000. There is no question that 75% of the fee ($15,000) became due when the blanket construction mortgage was placed on the project in October, 1973. The contract provided that the balance of the fee was to be paid at the time the project was “accepted” by the Jennings Housing Authority and HUD
The parties disagree about the construction of the word “accepted” in the contract. Plaintiff argues that the project was accepted when title was transferred by the developer to the Jennings Housing Authority on October 15, 1974. The trial judge accepted plaintiff’s argument.
Defendants argue that acceptance of the project has not yet occurred. They explain that although the Housing Authority for the City of Jennings has taken title to the property, $106,000 was withheld by the Authority from the purchase price to secure the project’s completion. Therefore, according to the defendants, the project has not been “accepted”. Defendants urge that until the entire purchase price is paid, there has been no acceptance.
Dozier prepared the contract setting Ellis’ fee for architectural services. If there is any doubt as to what the term “accepted” means, that doubt must be resolved against Dozier, the party who drafted the agreement. LSA-C.C. Articles 1957 and 1958. We affirm the trial court’s decision that the project was “accepted” by the Jennings Housing Authority and HUD when the developer transferred title to the project to the Jennings Housing Authority on October 15, 1975 and that plaintiff is entitled to the full fee of $20,000.
We now'address the issues presented by defendants’ reconventional demand. The first ground alleged in the reconven-tional demand is that Ellis drew the foundation plans for all of the project “a” type buildings 3 inches narrower than specifications provided. As a result of this error, more materials and labor were necessary. The contractor estimated the construction cost of adding 3 inches to the foundations to be $5,091, while Ellis estimated the increased cost to be $2,400. The increased cost resulting from the mistake in the foundation plans was ultimately borne by Dozier, because Dozier had entered into a “cost-plus” contract with the general contractor. In other words, Dozier had agreed to pay the contractor the actual cost of building the project, plus a certain amount for profit.
Ellis admitted making the 3-inch error in the foundation plans for the type “a” buildings, but explained that a 2-inch error in the foundation plans for the storage buildings located behind the dwellings in the project resulted in a savings to the developer amounting to $1,500 to $2,000. According to Ellis, both foundation plan errors *876 were discovered and discussed at length with Dozier and Roussel (Dozier’s general contractor) prior to the time that Dozier contracted with HUD and the Jennings Housing Authority to construct the project. Ellis testified further that the conversation between him, Dozier and Roussel produced a general agreement that the cost increase associated with the 3-inch foundation plan error and the cost decrease associated with the 2-inch error canceled each other out. In this regard, Ellis testified that the difference between the 3-inch error working to Dozier’s detriment and the 2-inch error benefiting Dozier was no more than $1,000.
Neither Dozier nor Roussel could recall discussing these foundation plan errors with Ellis, but Roussel did acknowledge that he knew of both errors. The trial judge made no express finding of fact as to whether Ellis and Dozier agreed to a “wash out” of the two errors. However, he did find on the record as a whole that the proof was insufficient to show that Dozier suffered a net loss as a result of these errors. We find the record reasonably supports this conclusion.
Ellis allegedly committed a second error by not including attic access panels in the architectural plans. According to the general contractor’s estimate, this “mistake” resulted in a cost increase of $3,123. The developer sought to pass these increased costs along to the Jennings Housing Authority by entering into “an amendatory agreement” to increase the contract selling price of the project by an amount equal to the cost of installing the attic access panels. Requests for amendatory agreements to contracts of sale for public housing projects, such as the one made regarding access panels in the present case, are reviewed by HUD officials. In the present case, HUD reviewed Dozier’s request and allowed the developer an increase of $2,067 in the contract price. In a letter dated June 18, 1974 from Bruno T. Lohrmann, director of HUD’s Operations Division in New Orleans, to the executive director of the Jennings Housing Authority, Lohrmann explained HUD’s position regarding the access panels:
“Our cost analysis indicated that an extra $2,067 will be allowed the developer for this change. However, we feel that in allowing this extra we are showing a considerable amount of discretion in this matter. These items are not an amenity but an integral part of the building provided by common construction practice whether they are indicated on the plans or not. Accordingly, these items are necessary from the contractor’s standpoint to permit inspection of attic components at the time of final inspection.”
At trial, Lohrmann and Roussel, the general contractor, testified that by common construction practice attic access panels are built whether they are drawn into the plans or not. This testimony indicates that Ellis may have been following accepted architectural and construction procedures in omitting attic access panels from the plans. Defendant failed to produce any evidence tending to prove that the absence of these panels in plaintiff’s plans amounted to a deviation from accepted architectural practice, or that Ellis failed to exercise the care and skill required of an architect. Therefore, Dozier’s claim for damages resulting from this alleged mistake are rejected.
The third and final error alleged in defendant’s reconventional demand is that electric ranges instead of gas ranges were included in the plans and specifications. The trial judge concluded that there was nothing in the record to prove that this was an error or omission on the part of the architect. We agree. There is no evidence to indicate that Ellis knew or should have known that Hud would later insist upon a change to gas ranges. By including electric ranges in the plans and specifications, Ellis chose the type of range which could be installed at the least cost to the developer. Therefore, this claim for damages is rejected.
For the reasons assigned, the judgment of the trial court is affirmed. All costs of this appeal are assessed against defendant-appellant.
AFFIRMED.